UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOVIE JAMES, SR., | No. 2:14-cv-2433 MCE CKD P |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| E. ARNOLD, | |
| Respondent. | |

Petitioner is a California prisoner proceeding pro se with a petition for writ of habeas corpus under 28 U.S.C. § 2254. He challenges Sacramento County convictions for attempted voluntary manslaughter, corporal injury on a cohabitant, elder abuse, making a criminal threat, and vehicle theft. He is serving a sentence of 23 years imprisonment and raises several claims.

I. Background

On direct appeal, the California Court of Appeal summarized the facts presented at petitioner's trial as follows:

> Around midnight on February 4, 2011, Elk Grove Police Officer Andrew Bornhoeft and his partner Officer Phillip Insixiengmay responded to a domestic violence call at Florence Taylor's Elk Grove home. Officer Bornhoeft found the 69-year-old Taylor standing in the garage. Her face was swollen and discolored, her right eye was discolored, very swollen and completely closed, and her left eye was also discolored and swollen. She also had bruises and contusions on her face.

1

Officer Bornhoeft asked Taylor to come inside and sit. Entering the home, he smelled a strong odor of gasoline and saw a red gasoline can sitting on top of the dryer. What appeared to be fecal matter and vomit were in the kitchen, and dentures were on the floor. Taylor told him that defendant beat and choked her and said he was going to kill both of them that night. She told Officer Bornhoeft that defendant took her car without her permission after the assault.

Cosumnes Fire Department paramedic Justin Quarisa arrived at the scene and saw Taylor lying down in the bedroom talking to a police officer. Quarisa noticed Taylor "had a lot of facial injuries." Taylor told him that she had been struck multiple times in the face with a fist, had been slammed into some cupboards, dragged across the floor, and doused with gasoline.

Elk Grove Police Detective Greg Kawamoto interviewed Taylor later that same day at the hospital. A recording of the interview was played to the jury. Taylor told Detective Kawamoto that defendant pulled her out of her bed by her neck and threw her on the floor and started stomping on her stomach. He also hit her in the head. Defendant held a lighter in his hand and threatened to burn her after he poured gasoline on her.

Taylor suffered bleeding around the brain and facial fractures as a result of the attack. Her injuries were consistent with having been beaten and kicked.

Taylor was unavailable for trial so her preliminary hearing testimony was admitted as evidence. Taylor testified that defendant was her live-in boyfriend. She argued with defendant on the day of the incident because he did not come home on time. The argument took place in the kitchen, where she "started swinging" even though defendant did not touch her. Defendant walked to the kitchen and Taylor followed, continuing the argument. She bumped into defendant, slipped and fell, hitting her head on the corner of the granite island. Defendant was gone when she got up. Her nephew, Anthony Clark showed up, and then "the fire department and the police and everything was [*sic*] at [her] house." She did not talk to any other officer about the incident. Defendant did not throw gas on her; she put the gas can in her home earlier that day. Her car was gone when she came home from the hospital and she did not give defendant permission to take it.

Taylor visited defendant at the Sacramento County Jail 58 or 59 times between December 11, 2011, and February 7, 2012. In a call to Taylor from jail, defendant told her, "I flashback to that scene, baby, and I hate it. I apologize to you." In another call, Taylor told defendant he broke her ribs, and he replied, "For real? No, honest, come on. I ain't broke no ribs." Later, defendant told Taylor he took her car because he had to get away. Defendant asked Taylor if she loved him and she replied, "I don't love nobody that's done tried to kill me." In another call, defendant told Taylor he had

> never done a thing to her until they "had the fight and the violence."
> During the call, Taylor told defendant, "You choked me."

Resp't's Lodged Doc No. 3 at 2-4.

At the end of the trial, jurors made the following findings:

1. Count 1: Not guilty of attempted murder, guilty of the lesser included offense of attempted voluntary manslaughter. Special Findings: (1) petitioner personally inflicted great bodily injury; (2) petitioner inflicted great bodily injury under circumstances involving domestic violence.

2. Count 2: Guilty of corporal injury on a cohabitant. Special Findings: personally inflicted great bodily injury under circumstances involving domestic violence.

3. Count 3: Guilty of elder abuse. Special Findings: personally inflicted great bodily injury under circumstances involving domestic violence.

4. Count 5: Guilty of a criminal threat.

5. Count 6: Guilty of vehicle theft.

RT 520-524. Jurors could not reach a verdict on Count 4, attempted arson, and a mistrial was declared. RT 497-498.

Petitioner's aggregate 23 year sentence of imprisonment breaks down as follows:

1. 11 years for Count 1, attempted voluntary manslaughter;

2. 4 years for the special finding on Count 1 that petitioner inflicted great bodily injury under circumstances involving domestic violence;

3. 5 years imposed pursuant to Cal. Penal Code 667(a) after the court found that petitioner had committed a prior "serious felony" as defined in that statute; and

4. 3 separate 1 year terms imposed pursuant to Cal. Penal Code 667.5(b) after the court found that petitioner had served three qualifying terms of imprisonment.

Petitioner's convictions and sentences were affirmed on direct appeal. Resp't's Lodged Doc. No. 3. Petitioner did not seek review of the Court of Appeal's decision in the California Supreme Court.

/////

3

II. <u>Standard For Habeas Corpus Relief</u>

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a).[1] Also, federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (referenced herein in as "§ 2254(d)." It is the habeas petitioner's burden to show he is not precluded from obtaining relief by § 2254(d). See <u>Woodford v. Visciotti</u>, 537 U.S. 19, 25 (2002).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different. As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in <u>Williams</u> [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

<u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002). A state court does not apply a rule different from the law set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply fails to cite or fails to indicate an awareness of federal law. <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002).

/////

/////

---

[1] The court does not have jurisdiction over any claim arising under state law.

4

The court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).

When a state court rejects a federal claim without addressing the claim, a federal court presumes the claim was adjudicated on the merits, in which case § 2254(d) deference is applicable. Johnson v. Williams, 133 S. Ct. 1088, 1096 (2013). This presumption can be rebutted. Id. All of petitioner's claims were only presented to the California Supreme Court in a petition for collateral relief. The claims were denied by the California Supreme Court without comment.

It is appropriate to look to lower federal court decisions to determine what law has been "clearly established" by the Supreme Court and the reasonableness of a particular application of that law. "Clearly established" federal law is that determined by the Supreme Court. Arredondo v. Ortiz, 365 F.3d 778, 782-83 (9th Cir. 2004). At the same time, it is appropriate to look to lower federal court decisions as persuasive authority in determining what law has been "clearly established" and the reasonableness of a particular application of that law. Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir. 1999); Clark v. Murphy, 331 F.3d 1062 (9th Cir. 2003), overruled on other grounds, Lockyer v. Andrade, 538 U.S. 63 (2003); cf. Arredondo, 365 F.3d at 782-83 (noting that reliance on Ninth Circuit or other authority outside bounds of Supreme Court precedent is misplaced).

III. Arguments and Analysis

    A.   "Pitchess" Review ("Ground One")

At trial, petitioner's counsel sought discovery of the personnel files of certain police officers involved in the investigation of the events of February 4, 2011 involving Florence Taylor and petitioner. Counsel made a motion pursuant to Pitchess v. Superior Court, 11 Cal.3d 531 (Cal. 1974) and the trial court conducted an *in camera* review of the requested documents. After conducting that review, the trial court denied trial counsel access to the records. Appellate counsel asked the Court of Appeal to conduct an independent review of the records. The Court of

5

1  Appeal did conduct an independent review, but also denied counsel access to any of the records
2  sought.   Resp't's Lodged Doc. No. 3.
3  While it is not entirely clear, it appears petitioner takes issue with the decision not to allow
4  his attorneys access to the personnel records.  However, petitioner has no freestanding federal
5  right to access to such records.  Petitioner does have a right to have the prosecution disclose
6  material evidence favorable to his defense, Brady v. Maryland, 373 U.S. 83, 87 (1963), but he
7  fails to point to anything suggesting any of the information sought amounted to evidence the
8  prosecution was required to turn over under the Constitution.
9  For these reasons, petitioner is not entitled to habeas relief with respect to the arguments
10  made under "Ground One."[2]
11  B.  Instructions Regarding Attempted Voluntary Manslaughter ("Ground Two")
12  With respect to his conviction for attempted voluntary manslaughter, petitioner claims
13  jurors were not adequately instructed as to intent.  This is not correct.  Jurors were instructed that
14  to find petitioner guilty of attempted voluntary manslaughter, they had to find that petitioner
15  intended to kill Ms. Taylor, RT 470-471, which is a correct statement of California law.
16  CALCRIM No. 604.
17  As indicated above, jurors found petitioner not guilty of attempted murder and could not
18  come to a unanimous verdict as to attempted arson.  After deliberations, the foreperson indicated
19  that with respect to attempted arson, the jury could not agree whether petitioner had the requisite
20  intent.  RT 503-504.  Petitioner suggests these facts indicate the requisite intent for attempted
21  voluntary manslaughter was rejected.  Petitioner fails to point to any specific facts in support of
22  this argument.  The jury's finding is not problematic as a matter of law since: 1) jurors could still
23  agree that petitioner intended to kill Ms. Taylor without agreeing as to whether he had the
24  requisite intent to commit attempted arson; and 2) petitioner's acquittal on attempted murder may

---

[2] Petitioner also suggests the performance of his trial and appellate counsel was somehow deficient in pursuit of "Pitchess" review.  This does not make sense as both trial and appellate counsel obtained the review sought.  The fact that those courts elected not to disclose any information is not attributable to trial or appellate counsel.

1 have been based on the fact that the jury felt the prosecution did not prove beyond a reasonable

2 doubt that there was not an adequate provocation justifying a finding of attempted voluntary

3 manslaughter, CT 486-87, not because petitioner did not intend to kill Ms. Taylor.[3]

4     Petitioner also asserts "[t]here was no unanimity instruction that required the jury to make

5 a selection as to what act or actions constituted the underlying offense." ECF No. 16 at 8. Again,

6 this is not correct. A unanimity instruction was given:

> The defendant is charged with attempted murder in Count 1.
>
> The People have presented evidence of more than one act to prove that the defendant committed this offense. You must not find the defendant guilty unless you all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act he committed.

11 CT 494. With respect to attempted voluntary manslaughter, a lesser included offense of

12 attempted murder, jurors were instructed, in part:

> An attempted killing that would otherwise be an attempted murder is reduced to attempted voluntary manslaughter if the defendant attempted to kill someone because of a sudden quarrel or heat of passion.

16 CT 486.

17     So, jurors were given the unanimity instruction referenced by petitioner with respect to

18 attempted murder, and then told that they had to find all of the elements of attempted murder, to

19 find petitioner guilty of attempted voluntary manslaughter. Any claim regarding the lack of a

20 unanimity instruction with respect to petitioner's conviction for attempted voluntary

21 manslaughter must be rejected.

22 /////

23 /////

24 /////

---

[3] Petitioner asserts jurors could not find the requisite intent for other offenses and special findings (see page 3 herein) because of the jury's indication that they could not come to an agreement as to whether petitioner had the requisite intent for attempted arson and because petitioner was acquitted of attempted murder. Again, petitioner fails to point to facts supporting his argument and petitioner has not shown he is entitled to relief as a matter of law.

In any case, the Supreme Court has specifically held that the Constitution does not require jurors to agree unanimously on the precise acts which underlie a guilty finding:

> We have never suggested that in returning general verdicts in such cases the jurors should be required to agree upon a single means of commission, any more than indictments were required to specify one alone. In these cases, as in litigation generally, "different jurors may be persuaded by different pieces of evidence, even when they agree on the bottom line." Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict. (Citation omitted.)

Schad v. Arizona, 501 U.S. 624, 631-32 (1991).

Finally, petitioner claims his conviction for attempted voluntary manslaughter is not logically consistent with his conviction for elder abuse as the former requires a "provocation," while elder abuse "requires the actions of the accused to be unjustified." With respect to attempted voluntary manslaughter, jurors did not find a "provocation," they found the prosecution did not prove the absence of one. CT 486-87. As for elder abuse, jurors found that petitioner "willfully inflicted unjustifiable physical pain or mental suffering on" Ms. Taylor. CT 489. In any case, petitioner fails to make any reasonable argument that based upon the facts presented to jurors, the verdicts rendered on attempted voluntary manslaughter and elder abuse are logically inconsistent.

Petitioner makes other allegations of fact under the heading "Ground Two" which either do not make sense or are not supported by any facts.[4] In any case, the court has reviewed all relevant portions of the record with respect to all of the allegations made under "Ground Two" and finds petitioner is not entitled to habeas relief.

C. "Consent" In Spousal Abuse And Vehicle Theft ("Ground Three")

In his third claim, petitioner asserts jurors were left confused by the differences in the elements of corporal injury on a cohabitant and vehicle theft. Jurors were instructed with respect to corporal injury on a cohabitant that they had to find petitioner was a cohabitant with Ms.

---

[4] For example: "Also CalCrim 252 Union of Act and Intent invalidate the jury's verdict on <u>all</u> counts in particular count one. The jury was left to assume that the prosecutor had met his burden of proof <u>beyond</u> a reasonable doubt. Thereby relieving the state of the constitutional burden."

1   Taylor and one of the factors the jury could consider was whether petitioner and Ms. Taylor
2   exercised "joint use or ownership of property." As for vehicle theft, jurors were instructed that
3   they could not conclude that Ms. Taylor consented to the taking of her vehicle by petitioner
4   "based on previous consent alone."

5   Petitioner has not shown the jury's finding that Ms. Taylor did not consent to petitioner
6   taking her car on February 4, 2011 is inconsistent with a finding that petitioner and Ms. Taylor
7   were cohabitants. As indicated above, jurors were presented with Ms. Taylor's preliminary
8   hearing testimony where she indicated petitioner lived with her on the evening of the events at
9   issue. CT 44-45. Petitioner did not testify so he did not dispute this. So, regardless of whether
10  jurors believed Ms. Taylor consented to petitioner using her car on February 4, 2011, there was
11  evidence that she and petitioner cohabitated which means the jury's finding of guilt on one crime
12  did not logically preclude a finding of guilt on the other.

13  For these reasons, "Ground Three" must be rejected.

14      D.  <u>Intent In Making A Criminal Threat And Vehicle Theft ("Ground Four")</u>

15  Again, petitioner draws conclusions about the legitimacy of other verdicts from the fact
16  that the foreperson of his jury indicated that they could not agree whether petitioner intended to
17  commit arson and because petitioner was acquitted of attempted murder. Again, petitioner fails
18  to point to facts supporting his argument and petitioner has not shown he is entitled to relief as a
19  matter of law.

20  This time, petitioner specifically suggests that the jury's finding that the prosecution did
21  not prove beyond a reasonable doubt that petitioner did not attempt to kill Ms. Taylor because of
22  a sudden quarrel or heat of passion precludes any finding that petitioner had the requisite intent
23  for making a criminal threat or vehicle theft. The intent required for making a criminal threat is
24  that petitioner intended whatever statement he made be understood as a threat. CT 490. For
25  vehicle theft, the intent required is that petitioner intended to deprive Ms. Taylor of her vehicle
26  for any period of time. CT 491. Contrary to petitioner's suggestion, no provision under
27  California law reduces culpability for making a criminal threat or committing vehicle theft if the
28  defendant acted because of a sudden quarrel or under the heat of passion. Furthermore, despite

petitioner's assertion to the contrary, jurors finding that the prosecution did not prove beyond a reasonable doubt that petitioner did not attempt to kill Ms. Taylor because of a sudden quarrel or heat of passion does not mean that jurors found that all of petitioner's actions on the evening of February 4, 2011 were the result of a sudden quarrel or heat of passion.

Petitioner is not entitled to relief under "Ground Four."

E.  "Ground Five"

Under the heading for "Ground Five," petitioner reasserts arguments made in other parts of his petition. Those arguments will not be addressed a second time here.

Petitioner does assert, for the first time, that because jurors could not come to a verdict on attempted arson, his conviction for making a criminal threat must also be dismissed. "With the arson charge dismissed, there is no other threat which jurors could have agreed upon because there was no other!" The court assumes that the foreperson of the jury was correct when he or she said jurors could not reach a verdict on attempted arson because jurors could not agree as to whether petitioner had the requisite intent for attempted arson; that is, they could not agree whether petitioner intended to set fire to a structure when he poured gasoline on Ms. Taylor. CT 489-490. But this fact has no bearing on whether petitioner made a criminal threat which, under California law must be made orally. CT 490.

Petitioner also asserts for the first time that petitioner's conviction for corporal injury on a cohabitant cannot stand based upon jurors finding that the prosecution did not prove beyond a reasonable doubt that petitioner did not attempt to kill Ms. Taylor because of a sudden quarrel or heat of passion. This argument is rejected for the same reasons the argument is rejected as to petitioner's convictions for making a criminal threat and vehicle theft.

F.  Competency ("Ground Six")

Petitioner claims the trial court had a duty to hold a hearing as to whether petitioner was competent to stand trial. To be competent to stand trial a defendant must have the ability to consult with his attorney and understand the proceedings against him. Cooper v. Oklahoma, 517 U.S. 348, 354 (1996). The Due Process Clause of the Fourteenth Amendment requires that a trial court conduct a hearing as to a criminal defendant's competence to stand trial if evidence before

the court raises a "bona fide doubt" as to the defendant's competence. Maxwell v. Roe, 606 F.3d 561, 574 (9th Cir. 2010). Relevant factors in determining whether further inquiry by way of a competency hearing should be undertaken include evidence of irrational behavior, demeanor in court and prior medical opinions regarding competence. Drope v. Missouri, 420 U.S. 162, 180 (1975).

The primary flaw with petitioner's claim is there is no allegation that petitioner was not competent to stand trial; that he could not consult with counsel or that he did not understand the proceedings. Further, petitioner fails to point to anything occurring during trial which should have given the trial court pause as to petitioner's competency. Finally, nothing suggests the trial court was ever presented with any medical opinions, prior or contemporaneous, calling into question petitioner's competency to stand trial. For these reasons, petitioner's claim that the trial court violated petitioner's right to due process by not holding a competency hearing should be denied.[5]

G. Unanimity Instruction For Corporal Injury On A Cohabitant And Elder Abuse ("Ground Seven")

Petitioner claims that the trial court should have specifically instructed jurors that in order to find petitioner guilty of corporal injury on a cohabitant or elder abuse, they had to unanimously agree on the actual acts committed by petitioner against Ms. Taylor. It appears petitioner is correct that unanimity instructions were not given with respect to Count 2, corporal injury on a cohabitant or Count 3, elder abuse. However, as indicated above, the Supreme Court has specifically held that the Constitution does not require jurors to agree unanimously on the precise acts which underlie a verdict of guilty. Schad, 501 U.S. at 631-32.[6]

---

[5] Embedded within petitioner's competency claim are statements calling into question trial counsel's failure to highlight petitioner's mental issues and drug use at trial. To be clear, petitioner has not made a showing of ineffective assistance of counsel by establishing the result of his trial was prejudiced by the unprofessional errors of trial counsel. Strickland v. Washington, 466 U.S. 668, 694 (1984). Petitioner did not testify at trial and counsel did not otherwise put on a defense. Nothing presented by petitioner suggests these were not strategically sound decisions.

[6] Respondent notes correctly that the California Supreme Court has held that in certain circumstances California law requires that a unanimity instruction be given. See People v. Russo,

H. Ineffective Assistance of Counsel ("Ground Eight")

In his final claim, petitioner asserts both his trial and appellate counsel violated petitioner's Sixth Amendment right to effective assistance of counsel by failing to raise the issues identified above. A key element with respect to ineffective assistance of counsel claims is that prejudice must be established. Strickland, 466 U.S. at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. As indicated above, none of the claims identified by petitioner have merit. Therefore, petitioner has not shown prejudice resulting from either trial or appellate counsel's not raising them.

IV. Relief Precluded Under 28 U.S.C. § 2254(d)

Not only has petitioner failed to show any violation of his federal rights warranting habeas corpus relief, petitioner is also precluded from obtaining relief on any of his claims by 28 U.S.C. § 2254(d). This is because the California Supreme Court's decision rejecting petitioner's claims is not in any respect contrary to, nor does it involve an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States; and the decision is not based upon an unreasonable determination of the facts.

For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus be denied; and

2. This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." In his objections petitioner

---

25 Cal.4th 1124, 1132 (Cal. 2001). However, a writ of habeas corpus cannot issue for violations of state law. 28 U.S.C. § 2254(a). To the extent petitioner claims his rights arising under California law were violated by the trial court's failure to give a unanimity instruction, the California Supreme Court's rejection of all of the claims presented in his petition for writ of habeas corpus filed in that court is the final word on the matter.

1 may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  <u>See</u> Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  November 7, 2016

                                                               _/s/ Carolyn K. Delaney_
                                                               CAROLYN K. DELANEY
                                                               UNITED STATES MAGISTRATE JUDGE

1
jame2433.157